[Cite as *State v. Britten*, 2024-Ohio-5580.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|                          |   |                          |
|--------------------------|---|--------------------------|
| STATE OF OHIO,           | : | APPEAL NO. C-240205      |
|                          |   | TRIAL NO. B-2301974      |
| Plaintiff-Appellee,      | : |                          |
|                          |   |                          |
| vs.                      | : |                          |
|                          |   |                          |
| DAZZMUND BRITTEN,        | : | *O P I N I O N*          |
|                          |   |                          |
| Defendant-Appellant.     | : |                          |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 27, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Lewis Law Firm, Inc., LPA*, and *Cornelious "Carl" Lewis,* for Defendant-Appellant.

**WINKLER, Judge.**

**{¶1}** Defendant-appellant Dazzmund Britten appeals the trial court's judgment convicting him, upon guilty pleas, of having a weapon while under a disability and trafficking in cocaine. For the following reasons, we affirm.

## I.   Factual and Procedural History

**{¶2}** In April 2023, after a search of his apartment, Britten was arrested and charged with drug and weapon offenses. He posted bond while awaiting trial. He eventually entered into a plea agreement with the State where, in exchange for his guilty pleas to trafficking in cocaine and having a weapon while under a disability, the State agreed to dismiss the major-drug-offender ("MDO") specification attached to the trafficking offense as well as the drug-possession charge, which also included an MDO specification, and other charges in an unrelated case. The parties also agreed to a sentence of eight to ten-and-a-half years.

**{¶3}** On December 5, 2023, the trial court conducted the Crim.R. 11(C) plea colloquy. During the colloquy, the trial court informed Britten, as relevant to this appeal, that "your attorney could obtain witnesses to testify on your behalf at trial, and he could also cross-examine any witnesses that testified against. Do you understand that?" Britten responded, "Yes." Britten also executed a written plea-waiver form, which stated that Britten understood that "by pleading guilty I give up my constitutional rights to . . . have subpoenaed witnesses in my favor[.]" Finally, Britten acknowledged that he was satisfied with his attorney and was entering the pleas upon his own free will. After accepting his guilty pleas, the trial court continued the case for sentencing to January 17, 2024, and Britten remained out on bond.

**{¶4}** In early January 2024, Britten retained new trial counsel, who moved to withdraw his guilty pleas under Crim.R. 32.1 and requested that the January 17

sentencing date be vacated. In his motion, Britten contends that he was pressured into accepting the plea agreement because he had been made to believe that he would have been immediately "locked up" if he did not plead guilty.

{¶5} On April 1, 2024, the trial court held a hearing on Britten's motion to withdraw his pleas. At the hearing, Britten testified that he was only given ten minutes to decide whether to take the plea deal and was not given an opportunity to discuss the decision with his family. Britten also testified that his attorney had told him that the judge was going to lock him up that day if he did not accept the plea deal and, because he had to pick up his son from daycare, he felt pressured into accepting the plea agreement.

{¶6} On cross-examination, the State asked Britten whether he remembered that one week before he had entered his guilty pleas, he had been at court with his former defense counsel when the State had been seeking to revoke Britten's bond for some "violations," but that the State had agreed to hold off on pursuing its motion so Britten could have a few days to consider the plea offer. Britten testified that he did not remember that and stated that when he first learned of the plea offer defense counsel took him aside and gave him only ten minutes to consider whether he should accept the plea agreement. He did state that during this time, he also discussed with counsel whether there was a possibility that the State would agree to a shorter prison term, but his trial counsel had told him that this was the best deal he was going to get.

{¶7} The trial court denied the motion to withdraw his pleas, noting that at the plea colloquy Britten had assured the court that he was entering the pleas under his own free will and had not been threatened. The trial court then imposed the agreed upon sentence. Britten now appeals, asserting two assignments of error.

3

## II.    Analysis

**{¶8}**  In his first assignment of error, Britten contends that his convictions must be reversed because the trial court did not inform him of his right to compulsory process. We are unpersuaded.

**{¶9}**  When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. In order for a plea to be knowingly, intelligently, and voluntarily entered, a defendant must be "informed in a reasonable manner at the time of entering his guilty plea of his rights to a trial by jury and to confront his accusers, and his privilege against self-incrimination, and his right of compulsory process for obtaining witnesses in his behalf." *State v. Ballard*, 66 Ohio St.2d 473, 478 (1981); Crim.R. 11(C)(2)(c). A trial court must strictly comply with the constitutional notifications contained in Crim.R. 11(C)(2)(c). *Id.* at ¶ 14, citing *State v. Green*, 2019-Ohio-1428, ¶ 3 (1st Dist.).

**{¶10}**  To "strictly comply with the rule, the trial court must orally advise the defendant, in a manner reasonably intelligible to that defendant, that the plea waives the rights enumerated in the rule." *State v. Jones*, 2021-Ohio-1864, ¶ 17, citing *State v. Miller*, 2020-Ohio-1420, ¶ 18-19. With respect to compulsory process, it is sufficient to explain this concept to a defendant if the court uses the phrase "compulsory process" or explains to the defendant that he "has the right to subpoena witnesses" or "summon and call witnesses." *State v. Senich*, 2003-Ohio-5082, ¶ 31 (8th Dist.).

**{¶11}**  Britten argues here that the trial court only informed him that his attorney "could obtain witnesses to testify on his behalf" and that this explanation was insufficient to inform him of his constitutional right to compulsory process. But Britten has not cited any cases where an Ohio court has held that this explanation was insufficient.

**{¶12}** In *State v. Barker*, 2011-Ohio-4130, the Ohio Supreme Court held that where a trial court informs a defendant that he has the "right to call witnesses to speak on your behalf," the court has satisfied the mandate to explain the constitutional right of compulsory process to the defendant. *Id.* at ¶ 16. In reaching this holding, the Supreme Court noted that "a review of legal and standard dictionaries reveals that 'to call' commonly means 'to summon.'" *Id.* at ¶ 17. Further, the *Barker* court held that "an alleged ambiguity during a Crim.R. 11 colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Id.* at ¶ 25. In *Barker*, the written plea form stated that, "I understand by entering this plea I give up my right to a jury trial or court trial, where I could see and have my attorney question witnesses against me, and where I could use the power of the court to call witnesses to testify for me." *Id.* at ¶ 21.

**{¶13}** Applying *Barker* to Britten's case, we hold that Britten was properly informed that he was waiving his right to compulsory process when he entered his guilty pleas. Here, the trial court told Britten that his attorney "could obtain witnesses to testify on his behalf." A review of legal and standard dictionaries reveals that "to obtain" means "to get, acquire, or secure." *See Websters New International Dictionary* (2d Ed. 1952), and *Garner, Black's Law Dictionary* (Rev. 4th Ed. 1968). While we recognize this language is not crystal clear in informing Britten that he is waiving his right to subpoena witnesses to testify on his behalf at trial, it is enough to demonstrate that the trial court was referring to the right to compulsory process or the right to call witnesses to testify on Britten's behalf. Because the trial court's explanation was ambiguous, we may look at other parts of the record to determine whether Britton was informed that by entering guilty pleas, he was waiving his right

to subpoena witnesses. Here, the written plea-waiver form that Britton executed stated that "by pleading guilty I give up my constitutional rights to . . . have subpoenaed witnesses in my favor[.]"

**{¶14}** Considering that Britten was told that his attorney could obtain witnesses for him, his executed plea-waiver form indicated that he was waiving his right to subpoena witnesses, and, during the plea colloquy, Britton acknowledged that his counsel had reviewed the form with him and that he had understood it, we hold that Britten was informed that he was waiving his right to compulsory process by entering guilty pleas. Accordingly, the first assignment of error is overruled.

**{¶15}** In his second assignment, Britton argues that the court erred by denying his presentence motion to withdraw his guilty pleas.

**{¶16}** Crim.R. 32.1, the rule governing a motion to withdraw a guilty plea, provides, "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although a presentence motion to withdraw a guilty plea should be freely and liberally granted, a defendant does not have an absolute right to withdraw a guilty plea before sentence. *State v. Xie*, 62 Ohio St.3d 521, 527 (1992); *State v. McCoy*, 2023-Ohio-361, ¶ 10 (1st Dist.). The decision whether to grant the motion lies within the trial court's discretion. *Xie* at paragraph two of the syllabus; *State v. Sykes*, 2007-Ohio-3086, ¶ 5 (1st Dist.).

**{¶17}** In *State v. Zachary,* 2024-Ohio-422 (1st Dist.), this court recently set forth the factors to be considered when reviewing a trial court's denial of a presentence motion to withdraw a guilty plea. Those factors include:

(1) whether the defendant was represented by highly competent

counsel; (2) whether the defendant was afforded a complete Crim.R. 11 hearing before entering the plea; (3) whether the trial court conducted a full and impartial hearing on the motion to withdraw the plea; (4) whether the trial court gave full and fair consideration to the motion; (5) whether the motion was made within a reasonable time; (6) whether the motion set out specific reasons for the withdrawal; (7) whether the defendant understood the nature of charges and the possible penalties; (8) whether the defendant was possibly not guilty of the changes or had a complete defense to the charges; and (9) whether the state would have been prejudiced by the withdrawal of the plea.

*Id.* at ¶ 6, citing *State v. Fish*, 104 Ohio App.3d 236 (1st Dist. 1995), *overruled on other grounds* in *State v. Sims*, 2017-Ohio-8379 (1st Dist.).

**{¶18}** These factors are not exhaustive, and a reviewing court may consider other factors as dictated by the circumstances of the particular case. *Id.* at ¶ 7, citing *Fish* at 240. The ultimate question for the trial court is whether there is a "reasonable and legitimate basis for the withdrawal of the plea." *Xie* at 527. Generally, a "change of heart" is an insufficient justification for the withdrawal of a plea. *Zachary* at ¶ 16; *State v. Conley*, 2021-Ohio-837, ¶ 16 (1st Dist.).

**{¶19}** After reviewing the factors present in this case, we hold that the trial court did not abuse its discretion by denying Britten's motion to withdraw his guilty pleas. Although the State admitted at the hearing that it would not be prejudiced if the pleas were withdrawn (factor 9), and the motion was made in a timely fashion (factor 5), we note that Britten did not argue that he was not guilty of the charged offenses or that he had a defense to the charges to present (factor 8). Further, it was undisputed that Britten had been represented by competent counsel at the plea hearing (factor 1)

7

and that he understood the nature of charges and the possible penalties (factor 7), he was afforded a full Crim.R 11 hearing before entering his plea (factor 2), and a hearing was held on his motion, where the trial court considered his arguments and testimony (factor 3). The trial court simply did not believe that Britten felt pressured to enter his guilty pleas and the record reflects that the court considered Britten's request to withdraw his pleas as more of a "change of heart."

{¶20} The second assignment of error is overruled.

### III.    Conclusion

{¶21}  Having overruled both assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON, P.J.**, and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.